## ZEPHEMIAH POLK'S [1] LESSEE v. EDWARD MINNER and BETTY THORN.

Supreme Court. Sussex. March, 1795.

*Wilson's Red Book, 63.*

---

[1] Note that in the opinion by Chief Justice Read, below, Zephemiah Polk's name is spelled, "Zephemiah Pollock."

*Wilson, contra.* The plaintiff did not mean to prove any other fact by the jurors than this, that they had only a memorandum taken by a juror on the view and not any deposition; and urged that former determinations were so, Barnes 438.

*Bayard* for defendant read a determination, 1 Term 11, which cited Barnes and, he said, was founded on it.

PER CURIAM. The examination of the jurors upon the subject of this verdict is improper, and has been found in experience to be bad, and therefore has been changed. It is opening a door to an evil that would be very extensive, and we are governed by the reason of the latest determination.

Affidavits were read of what the plaintiff's attorney in fact had been heard to say, and, I think, of what the jurymen had said.

*Wilson* showed cause. The discretion used by courts in granting new trials is a legal one and is governed by fixed principles, for it is not in every case where verdicts are contrary to evidence, or where the jury have misbehaved, that a new trial is had; a new trial will not, for instance, be granted against the justice of the case or upon formal objections, 2 Morg.Ess. 3, 7, 67, 8. Nor unless the scale of evidence strongly preponderates against the

verdict, 2 Morg.Ess. 7.   Nor where the matter is not of moment, *ibid.*

As to the first ground; if a juror deliver an escrow to his fellows, (though it have a bad effect, which it is clear was not the case here) it is no ground for a new trial, but it would be otherwise if delivered by a party, 2 Morg.Ess. 48.   The paper's being illegal evidence makes the case no worse, 2 Morg.Ess. 105.   It contained no more than what it was their duty to remember. Where a verdict is given contrary to all the evidence and unsupported by any, it has been set aside, but not so where there has been evidence on both sides, for it is the province of jurors to decide facts of which they are the constitutional judges, 2 Morg. Ess. 52, 53, 100; [2] Salk. 645.

The Court advised at all events that the verdict should be for the plaintiff.

[*Wilson.*]   There is evidence drawn from the face of the ground and the appearance of improvements, lines, boundaries, etc. which cannot be had by testimony and yet may be conclusive on view; the jury therefore were more competent as it was a dispute entirely on location.   5 Bac.Abr. 242, 2 Morg.Ess. 52.

*Ridgely* and *Bayard, contra,* urged that the verdict was contrary to the law arising upon the will.   The question was what lands were intended to be devised to Zephemiah in his father's will as the easternmost end; that the jury, as the testator gave Zephemiah the east end, ought to give the east end only, not what the testator thought was east.   That when a jury have received an escrow from either party the verdict is void, 2 Morg.Ess. 11 and 13.   Any undue influence mixed with the verdict of a jury vitiates it.

*Miller* replied.

PER CURIAM.   READ, C. J.   The Court are of opinion that a new trial be granted because the verdict is contrary to the whole of the evidence upon that point, to wit, what was intended by Robert Pollock to be devised to Zephemiah Pollock, which sufficiently appeared by the evidence of what lands were in contest formerly with the Nutters. It was directly in opposition to the will; we did instruct the jury to find for the plaintiff.   We would have been glad to have seen a statement of the case from Bac.Abr. 252.   As to the view, I think the granting of views here has been upon more general principles; granting of views here is of course, but not so in England, for they are not granted there but upon sufficient cause shown, and I think they are often improperly granted here in cases where it is not necessary.   It is on payment

of costs; and we think costs should be generally paid by appli- cants for new trials.

*N. B.* The CHIEF JUSTICE afterwards said that "in a course of forty years' (I think) practice, I have never known but one case where a view was necessary."